IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-349

 No. COA20-139

 Filed 20 July 2021

 Robeson County, No. 15CRS053022

 STATE OF NORTH CAROLINA

 v.

 SHANNON NICOLE CHAVIS, Defendant.

 Appeal by defendant from judgments entered on or about 27 February 2019 by

 Judge James G Bell in Superior Court, Robeson County. Heard in the Court of

 Appeals 9 September 2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kenzie M.
 Rakes, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron
 Thomas Johnson, for defendant-appellant.

 STROUD, Chief Judge.

¶1 Defendant appeals judgments for her convictions of robbery with a dangerous

 weapon and conspiracy to commit robbery with a dangerous weapon. Defendant

 raises several arguments on appeal but after consideration of each issue, we conclude

 there was no error with these convictions. However, defendant was also found guilty

 of direct criminal contempt; as to the contempt order and judgment, we reverse.

 I. Background
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

¶2 The State’s evidence tended to show that in May of 2015 defendant and her

 boyfriend entered Mr. Jones’s home wanting his “gun and pills.” Mr. Jones had

 previously dated defendant’s mother. Defendant’s boyfriend pinned down Mr. Jones,

 and they hit him with a stick. Defendant also tased Mr. Jones “two or three times”

 around the head and neck area. Defendant’s boyfriend took Mr. Jones’s wallet. As a

 result of the attack, Mr. Jones had blood coming out of his ear, a knot on his head,

 and a taser burn. Defendant was indicted for robbery with a dangerous weapon and

 conspiracy to commit robbery with a dangerous weapon. The jury found defendant

 guilty of both charges; the trial court entered judgments, and defendant appeals.

 II. Use of Dangerous Weapon

¶3 During her trial defendant moved to dismiss the charges against her without

 giving any specific reason, and the trial court denied the motion. Defendant first

 contends that “[t]he trial court erred by denying” her “motion to dismiss because the

 evidence showed that the taser at issue was not a ‘dangerous weapon[,]’” an essential

 element of both robbery with a dangerous weapon and conspiracy to commit robbery

 with a dangerous weapon. See generally State v. Gwynn, 362 N.C. 334, 337, 661

 S.E.2d 706, 707-08 (2008) (“Under N.C.G.S. § 14–87(a), the essential elements of

 robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take

 personal property from the person or in the presence of another; (2) by use or

 threatened use of a firearm or other dangerous weapon; (3) whereby the life of a
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 person is endangered or threatened.” (quotation marks and brackets omitted)); see

 also State v. Lyons, 268 N.C. App. 603, ___, 836 S.E.2d 917, 921 (2019), disc. review

 denied, 374 N.C. 744, 842 S.E.2d 592 (2020) (“To ultimately convict a defendant of

 conspiracy, however, the State must prove there was an agreement to perform every

 element of the underlying offense[.]” (quotation marks and brackets omitted)).

 A. Standard of Review

¶4 Though defendant did not state the reason for her motion to dismiss,

 “defendant’s simple act of moving to dismiss at the proper time preserved all issues

 related to the sufficiency of the evidence for appellate review.” State v. Golder, 374

 N.C. 238, 246, 839 S.E.2d 782, 788 (2020).

 When a defendant moves for dismissal, the
 trial court is to determine whether there is
 substantial evidence (a) of each essential
 element of the offense charged, or of a lesser
 offense included therein, and (b) of
 defendant’s being the perpetrator of the
 offense. If so, the motion to dismiss is properly
 denied.
 Substantial evidence is such relevant evidence as a
 reasonable mind might accept as adequate to support a
 conclusion. In borderline or close cases, our courts have
 consistently expressed a preference for submitting issues to
 the jury, both in reliance on the common sense and fairness
 of the twelve and to avoid unnecessary appeals.

 State v. Rivera, 216 N.C. App. 566, 567-68, 716 S.E.2d 859, 860 (2011) (emphasis

 added) (citations and quotation marks omitted). Furthermore, “[t]his Court reviews
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 the trial court’s denial of a motion to dismiss de novo. Under a de novo review, the

 court considers the matter anew and freely substitutes its own judgment for that of

 the lower tribunal.” State v. Southerland, 266 N.C. App. 217, 219, 832 S.E.2d 168,

 170 (2019) (citation and quotation marks omitted).

 B. Analysis

¶5 Defendant contends the taser was not a dangerous weapon. In Rivera, an

 assailant used a stun gun on the victim. Rivera, 216 N.C. App. at 567, 716 S.E.2d at

 860. An officer testified during the defendant’s trial that “the overall potential for

 serious physical injury or death from a stun gun is minimal, and the overall potential

 for serious physical injury or death from a stun gun would be consistent with being

 struck with a hand or foot.” Id. (quotation marks and brackets omitted). The

 defendant in Rivera moved to dismiss the charge against him, robbery with a

 dangerous weapon. See id. The trial court denied the motion, and the jury found the

 defendant guilty of robbery with a dangerous weapon. Id. The defendant appealed,

 and this Court noted, “The dispositive issue in this case is whether there was

 sufficient evidence presented at trial to establish that the stun gun was a dangerous

 weapon that endangered or threatened [the victim’s] life.” Id. at 568, 716 S.E.2d at

 860-61.

¶6 This Court explained,

 When deciding whether an object is a dangerous
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 weapon, our Supreme Court has stated:
 The rules are: (1) When a robbery is
 committed with what appeared to the victim
 to be a firearm or other dangerous weapon
 capable of endangering or threatening the life
 of the victim and there is no evidence to the
 contrary, there is a mandatory presumption
 that the weapon was as it appeared to the
 victim to be. (2) If there is some evidence that
 the implement used was not a firearm or
 other dangerous weapon which could have
 threatened or endangered the life of the
 victim, the mandatory presumption
 disappears leaving only a permissive
 inference, which permits but does not require
 the jury to infer that the instrument used was
 in fact a firearm or other dangerous weapon
 whereby the victim’s life was endangered or
 threatened. (3) If all the evidence shows the
 instrument could not have been a firearm or
 other dangerous weapon capable of
 threatening or endangering the life of the
 victim, the armed robbery charge should not
 be submitted to the jury.
 We must look at the circumstances of use to determine
 whether an instrument is capable of threatening or
 endangering life.

 Id. at 568–69, 716 S.E.2d at 861 (citations and quotation marks omitted).

¶7 In Rivera, this Court first determined that a stun gun can be a dangerous

 weapon. Id. at 569-570, 716 S.E.2d at 861-62. Here, we conclude that a taser is “what

 appeared to the victim to be a firearm or other dangerous weapon capable of

 endangering or threatening the life of the victim[.]” Id. at 568, 716 S.E.2d at 861.

 But since there was “some evidence that the implement used was not a firearm or
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 other dangerous weapon which could have threatened or endangered the life of the

 victim, the mandatory presumption disappears leaving only a permissive inference,

 which permits but does not require the jury to infer that the instrument used was in

 fact a firearm or other dangerous weapon whereby the victim’s life was endangered

 or threatened.” Id. at 571, 716 S.E.2d at 862. Further, in this case, the trial court

 instructed the jury it should determine whether a taser was a dangerous weapon, and

 thus we turn to the second rule described in Rivera “which permits but does not

 require the jury to infer that the instrument used was in fact a firearm or other

 dangerous weapon whereby the victim’s life was endangered or threatened.” Id. at

 569, 716 S.E.2d at 861.

¶8 Rivera notes that “our courts have consistently held that an object can be

 considered a dangerous or deadly weapon based on the manner in which it was used

 even if the instrument is not considered dangerous per se and the weapon does not

 cause death or a life threatening injury.” Id. at 571, 716 S.E.2d at 862. In Rivera,

 the victim “suffered significant pain from the shock, fell, and injured her rotator cuff.

 She endured two surgeries and extensive physical therapy. Two years after the

 robbery, Scott was still experiencing pain and a limited range of motion in her left

 arm.” Id. at 570, 716 S.E.2d at 86. In fact, as noted in Rivera, “in State v. Gay, 151

 N.C. App. 530, 566 S.E.2d 121 (2002), a stun gun was deemed as a dangerous weapon

 where the defendant did not actually use the stun feature but instead placed it
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 against the victim’s neck in order to take her backpack. Id. at 570, 716 S.E.2d at 861-

 82.

¶9 Here, the evidence regarding the manner of use of the taser would permit the

 jury to find it was a dangerous weapon. After the attack, Mr. Jones was bleeding

 from his ear, had a knot on his head, and had a taser burn. Defendant argues that

 the bleeding and head injury were caused by her boyfriend “punching Mr. Jones or

 hitting him with the walking stick[,]” but defendant used the taser as Mr. Jones was

 being beaten and held by her boyfriend when he removed Mr. Jones’s wallet from his

 pocket. In other words, defendant incapacitated, with the taser, Mr. Jones while he

 was being beaten, including on his head, to ensure he could not defend himself. The

 jury could conclude the taser was used as a deadly weapon. Accordingly, the trial

 court did not err in denying defendant’s motion to dismiss. This argument is

 overruled.

 III. Judicial Opinion

¶ 10 Defendant next contends that the trial court violated North Carolina General

 Statutes §§15A-1222 and -1232 by expressing the opinion that a taser was a

 dangerous weapon in its instructions to the jury. Defendant failed to raise this before

 the trial court but citing State v. Johnson, 253 N.C. App. 337, 801 S.E.2d 123 (2017),

 contends because it was a statutory violation it is preserved on appeal without

 objection and reviewable de novo. We agree. See generally id. at 345, 801 S.E.2d at
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 128 (“When a trial court acts contrary to a statutory mandate and a defendant is

 prejudiced thereby, the right to appeal the court’s action is preserved,

 notwithstanding defendant’s failure to object at trial. Defendant alleges a violation

 of a statutory mandate, and alleged statutory errors are questions of law and as such,

 are reviewed de novo.” (citations, quotation marks, and brackets omitted)). We note

 defendant does not challenge the jury instructions or argue plain error for failing to

 object to the instructions but bases this argument on appeal solely on a statutory

 violation, and we address it accordingly.

¶ 11 “An expression of judicial opinion is a statutory violation and a defendant’s

 failure to object to alleged expressions of opinion by the trial court in violation of a

 statute does not preclude his raising the issue on appeal.” State v. Davis, 265 N.C.

 App. 512, 514, 828 S.E.2d 570, 572 (citation, quotation marks, and brackets omitted),

 disc. review denied, 372 N.C. 709, 830 S.E.2d 839 (2019). We review this issue de

 novo. See Johnson at 345, 801 S.E.2d at 128. North Carolina General Statute § 15A-

 1222 provides that “[t]he judge may not express during any stage of the trial, any

 opinion in the presence of the jury or any question of fact to be decided by the jury[,]”

 and North Carolina General Statute §15A-1232 similarly provides, “In instructing

 the jury, the judge shall not express an opinion as to whether or not a fact has been

 proved and shall not be required to state, summarize or recapitulate the evidence, or
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 to explain the application of the law to the evidence.” N.C. Gen. Stat. §§ 15A-1222, -

 1232 (2019).

¶ 12 Specifically, defendant contends the trial court expressed its opinion at least

 twice by instructing,

 Robbery with a dangerous weapon. The defendant has been
 charged with robbery with a dangerous weapon, which is
 taking and carrying away the personal property of another
 from his person or in his presence without his consent by
 endangering or threatening a person’s life with a
 dangerous weapon--in this case it’s a taser--the taker
 knowing that she was not entitled to take the property and
 intending to deprive another of its use permanently[,]

 and a similar statement in laying out the elements for feloniously conspiring to

 commit robbery with a dangerous weapon by noting it required finding “endangering

 or threatening a person’s life with a dangerous weapon, in this case a taser[.]”

¶ 13 But defendant fails to note that in the next paragraph after the first robbery

 with a dangerous weapon instruction the trial court stated it was for the jury “to

 consider whether a taser is a deadly weapon[.]” Further, read in context it is clear

 the trial judge was noting the alleged weapon in question for the jury to consider was

 identified in the evidence as a taser, not that the taser was a dangerous weapon. It

 was the jury’s duty to determine if there was a dangerous weapon used, and that

 consideration involved whether the taser was a dangerous weapon. This argument

 is overruled.
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 IV. Serious Bodily Injury

¶ 14 Defendant next contends the trial court committed plain error in failing to

 sufficiently instruct the jury on “serious bodily injury.” Defendant admits this issue

 is unpreserved, and thus contends we review for plain error.

 As this Court and the Supreme Court have
 frequently stated, plain error consists of an error that is so
 fundamental that it undermines the fairness of the trial, or
 has a probable impact on the guilty verdict. In order to
 obtain relief on plain error grounds, an appealing party
 must show “(i) that a different result probably would have
 been reached but for the error or (ii) that the error was so
 fundamental as to result in a miscarriage of justice or a
 denial of a fair trial.” Given that a prerequisite to our
 engaging in a plain error analysis is the determination that
 the trial court’s ruling constitutes error at all we will
 initially determine if the trial court erred by denying
 Defendant’s suppression motion and then ascertain
 whether any error committed by the trial court rose to the
 level of plain error.

 State v. Harwood, 221 N.C. App. 451, 456, 727 S.E.2d 891, 896 (2012) (citations,

 quotation marks, and brackets omitted).

¶ 15 Here, the trial court defined “dangerous weapon” as “a weapon which is likely

 to cause death or serious bodily injury[.]” “Serious bodily injury” is not an element of

 robbery with a dangerous weapon or conspiracy to commit robbery with a dangerous

 weapon. See generally Gwynn, 362 N.C. at 337, 661 S.E.2d at 707-08; see also Lyons,

 268 N.C. App. at ___, 836 S.E.2d at 921. Defendant argues that the “term ‘serious

 bodily injury’ has no commonly understood everyday meaning” but it does have “a
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 fairly well-settled legal meaning.” Defendant notes several statutes where this term

 is defined for purposes of the crime defined by that statute. But “serious bodily

 injury” is not an element of the offense charged in this case. Instead, “serious bodily

 injury” was part of the trial court’s instructions defining the required element of

 “dangerous weapon” to the jury. Defendant focuses on Mr. Jones’s actual injuries but

 fails to address defendant’s “likely”, possible, or threatened injuries. As we have

 already discussed above, the taser here could be considered a dangerous weapon

 based upon its use to incapacitate Mr. Jones while he was being beaten. The State

 was not required to show Mr. Jones actually sustained “serious bodily injury” to show

 the taser was used as a dangerous weapon; the State need only show that the taser

 was used in a manner which “is likely to cause death or serious bodily injury.” See

 generally Rivera, 216 N.C. App. at 568-70, 716 S.E.2d at 860-62. This argument is

 overruled.

 V. Ineffective Assistance of Counsel

¶ 16 Defendant next contends that she received ineffective assistance of counsel

 where her attorney conceded her guilt of common law robbery without her knowing

 and voluntary consent shown on the record. This assertion is simply not true, and

 we need not address this argument in detail. The record shows the trial court
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

conducted a Harbison inquiry1 and directly asked defendant if she consented to her

counsel’s concession that she was guilty of common law robbery:

 THE COURT: All right. You heard [your
 attorney’s] argument to the jurors?

 DEFENDANT: Yes, sir.

 THE COURT: And more or less, he argued that
 you were guilty of common law robbery and not the robbery
 with a dangerous weapon?

 DEFENDANT: Yes, sir.

 THE COURT: More or less conceding that you
 were guilty of something but not the most serious, right?
 Did you understand that?

 DEFENDANT: Yes.

 THE COURT: Okay. You and [your attorney]
 talked about that?

 DEFENDANT: Yes.

 THE COURT: He told you the good and the bad
 about doing that?

1 “A Harbison inquiry regards the principle enunciated in State v. Harbison, 315 N.C. 175,

337 S.E.2d 504 (1985), in which the N.C. Supreme Court held that a counsel’s admission of
his client’s guilt, without the client’s knowing consent and despite the client’s plea of not
guilty, constitutes ineffective assistance of counsel. Accordingly, because of the gravity of the
consequences of pleading guilty, an inquiry with defendant is conducted, which involves a
thorough questioning of the defendant by the trial court in order to ensure that his decision
to plead guilty is made knowingly and voluntarily after full appraisal of the consequences.”
State v. Givens, 246 N.C. App. 121, 126, 783 S.E.2d 42, 46 (2016) (quotation marks, ellipses,
and brackets omitted).
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 DEFENDANT: Yes, sir.

 THE COURT: He answered any questions you
 had about that?

 DEFENDANT: Yes.

 THE COURT: Are you satisfied with his legal
 services?

 DEFENDANT: Yes.

 THE COURT: And he did have your permission
 to concede that you were guilty of the lesser included of
 common law robbery when he made his argument to the
 jurors?

 DEFENDANT: Yes.

 THE COURT: All right. Have you got any
 questions?

 DEFENDANT: No.

¶ 17 Although the colloquy occurred after defendant’s counsel’s argument,

 defendant has not raised any argument on appeal regarding the timing of the trial

 court’s inquiry and her answers indicate that her counsel had discussed the argument

 with her in advance of the argument. The transcript indicates defendant’s knowing

 acquiescence to her counsel’s concession of guilt to common law robbery based on the

 trial court’s colloquy. Defendant does not direct us to any case law supporting her

 argument that a defendant must completely understand every feasibly theoretical
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 possible outcome, and demonstrate that via the record, or else her attorney has per

 se provided ineffective assistance of counsel by admitting to a lesser-included offense.

 This argument is without merit.

 VI. Contempt

¶ 18 Last, defendant contends the trial court erred in holding her in direct criminal

 contempt for refusing to put on the clothes provided for her because there was no

 finding of willfulness on her part nor did the trial court employ the required

 reasonable doubt standard.

 In criminal contempt proceedings, our standard of
 review is limited to determining
 whether there is competent evidence to
 support the trial court’s findings of fact and
 whether the findings support the conclusions
 of law and ensuing judgment. Findings of fact
 are binding on appeal if there is competent
 evidence to support them, even if there is
 evidence to the contrary. The trial court’s
 conclusions of law drawn from the findings of
 fact are reviewable de novo.

 State v. Salter, 264 N.C. App. 724, 732, 826 S.E.2d 803, 809 (2019) (citation omitted).

¶ 19 North Carolina General Statute § 5A-14(b) provides,

 Before imposing measures under this section, the judicial
 official must give the person charged with contempt
 summary notice of the charges and a summary opportunity
 to respond and must find facts supporting the summary
 imposition of measures in response to contempt. The facts
 must be established beyond a reasonable doubt.
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 N.C. Gen. Stat. § 5A-14 (2019) (emphasis added).

¶ 20 Here, the trial court’s contempt order does not mention the standard of proof

 of beyond a reasonable doubt. The State directs us to In re Owens, 128 N.C. App. 577,

 496 S.E.2d 592 (1998), aff’d per curiam, 350 N.C. 656, 517 S.E.2d 605 (1999), and

 contends when there is no factual determination for a trial court to make, it need not

 explicitly state that it used the standard of beyond a reasonable doubt. But more

 recently than 1998, our Court has taken a plain reading approach to North Carolina

 General Statute § 5A-14 and required a finding that the trial court did use the proper

 standard, reasonable doubt. See State v. Ford, 164 N.C. App. 566, 571, 596 S.E.2d

 846, 849-50 (2004) (reversing order for direct criminal contempt because “[t]he only

 indication that the proper standard of review was applied was that he asked to review

 the statute before making his findings and that at the beginning of his findings, the

 boilerplate language of the order states ‘after consideration of the applicable law.’ We

 do not believe this sufficient to meet the requirement of Verbal that the findings

 should indicate that that standard was applied. Here, at best, the transcript

 indicates the judge may or may not have applied the proper standard, and there is no

 indication of the standard applied by the district court.” (emphasis in original)

 (citation, quotation marks, and brackets omitted)); see also In re Contempt

 Proceedings Against Cogdell, 183 N.C. App. 286, 290, 644 S.E.2d 261, 264 (2007)

 (reversing direct criminal contempt order because “the trial court’s order failed to
 STATE V. CHAVIS

 2021-NCCOA-349

 Opinion of the Court

 indicate that he applied the beyond a reasonable doubt standard to his findings as

 required by N.C.G.S. § 5A–14(b)”). Here, the transcript does not include any

 indication of the standard used, and the contempt order does not mention the

 standard of beyond a reasonable doubt, so we reverse the contempt order and

 judgment.

 VII. Conclusion

¶ 21 We conclude there was no error with the judgment and reverse the contempt

 order and judgment.

 NO ERROR IN PART; REVERSED IN PART.

 Judge COLLINS concurs.

 Judge MURPHY concurs as to Parts I through IV and concurs in result only

 without separate opinion as to Parts V and VI.